United States District Court
Southern District of Texas
**ENTERED**
August 31, 2020
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MARY CYNTHIA MENDIOLA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. H-19-0601 |
| | § | |
| ANDREW SAUL, COMMISSIONER OF THE | § | |
| SOCIAL SECURITY ADMINISTRATION, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND RECOMMENDATION

Before the Magistrate Judge in this social security appeal is Defendant's Motion for Summary Judgment (Document No. 13) and Plaintiff's cross-Motion for Summary Judgment (Document No. 15). Having considered the cross motions for summary judgment, Defendant's response to Plaintiff's motion, the administrative record, the written decision of the Administrative Law Judge, and the applicable law, the Magistrate Judge RECOMMENDS, for the reasons set forth below, that Plaintiff's Motion for Summary Judgment be GRANTED, that Defendant's Cross Motion for Summary Judgment be DENIED, and that this case be REMANDED to the Social Security Administration for further proceedings.

**I.     Introduction**

Plaintiff, Mary Cynthia Mendiola ("Mendiola") brings this action pursuant to Section 205(g) of the Social Security Act ("Act"), 42 U.S.C. § 405(g), seeking judicial review of an adverse final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her applications for disability insurance benefits and supplemental security income benefits. In

essentially two claims, Mendiola maintains: (1) that the ALJ erred in determining that she could perform her past work as a customer service clerk within the RFC that was found; and (2) that the opinion of a consultative examiner, upon which the ALJ relied, is not consistent with the findings of the consultative examiner.  The Commissioner, in contrast, maintains that there is substantial evidence in the record to support the ALJ's decision, that the decision comports with applicable law, and that the decision should be affirmed.

## II.     Procedural History

On or about May 12, 2016, Mendiola filed applications for disability insurance benefits and supplemental security income benefits, alleging that she has been disabled since October 30, 2014, as a result of diabetes, neuropathy, vision problems, glaucoma, carpal tunnel, high blood pressure and arthritis.  The Social Security Administration denied her applications at the initial and reconsideration stages.  After that, Mendiola requested a hearing before an ALJ.  The Social Security Administration granted her request and the ALJ, Robert N. Burdette, held a hearing on October 26, 2017, at which Mendiola's claims were considered *de novo*.  (Tr. 26-51).  Thereafter, on December 5, 2017, the ALJ issued his decision finding Mendiola not disabled.  (Tr. 11-21).

Mendiola sought review of the ALJ's adverse decision with the Appeals Council.  The Appeals Council will grant a request to review an ALJ's decision if any of the following circumstances are present: (1) it appears that the ALJ abused his discretion; (2) the ALJ made an error of law in reaching his conclusion; (3) substantial evidence does not support the ALJ's actions, findings or conclusions; or (4) a broad policy issue may affect the public interest.  20 C.F.R. § 416.1470.  On December 11, 2018, the Appeals Council found no basis for review (Tr. 1-3), and the

ALJ's December 5, 2017, decision thus became final.

Meniola has filed a timely appeal of the ALJ's decision. 42 U.S.C. § 405(g). Both sides have filed a Motion for Summary Judgment and been given time to respond to the other's motion. The appeal is now ripe for ruling.

**III.    Standard for Review of Agency Decision**

The court's review of a denial of disability benefits is limited "to determining (1) whether substantial evidence supports the Commissioner's decision, and (2) whether the Commissioner's decision comports with relevant legal standards." *Jones v. Apfel*, 174 F.3d 692, 693 (5th Cir. 1999). Indeed, Title 42, Section 405(g) limits judicial review of the Commissioner's decision: "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." The Act specifically grants the district court the power to enter judgment, upon the pleadings and transcript, "affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing" when not supported by substantial evidence. 42 U.S.C.§ 405(g). While it is incumbent upon the court to examine the record in its entirety to decide whether the decision is supportable, *Simmons v. Harris*, 602 F.2d 1233, 1236 (5th Cir. 1979), the court may not "reweigh the evidence in the record nor try the issues de novo, nor substitute [its] judgment for that of the [Commissioner] even if the evidence preponderates against the [Commissioner's] decision." *Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir. 1988); *Jones v. Apfel*, 174 F.3d 692, 693 (5th Cir. 1999); *Cook v. Heckler*, 750 F.2d 391 (5th Cir. 1985). Conflicts in the evidence are for the Commissioner to resolve. *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992).

The United States Supreme Court has defined "substantial evidence," as used in the Act, to be "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229 (1938). Substantial evidence is "more than a scintilla and less than a preponderance." *Spellman v. Shalala,* 1 F.3d 357, 360 (5th Cir. 1993). The evidence must create more than "a suspicion of the existence of the fact to be established, but no 'substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983).

### IV. Burden of Proof

An individual claiming entitlement to disability insurance benefits under the Act has the burden of proving his disability. *Johnson v. Bowen*, 864 F.2d 340, 344 (5th Cir. 1988). The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The impairment must be proven through medically accepted clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3). The impairment must be so severe as to limit the claimant in the following manner:

> he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied to work.

42 U.S.C. § 423(d)(2)(A). The mere presence of an impairment is not enough to establish that one

is suffering from a disability. Rather, a claimant is disabled only if he is "incapable of engaging in any substantial gainful activity." *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992) (quoting *Milam v. Bowen,* 782 F.2d 1284, 1286 (5th Cir. 1986)).

The Commissioner applies a five-step sequential process to decide disability status:

1. If the claimant is presently working, a finding of "not disabled" must be made;

2. If the claimant does not have a "severe impairment" or combination of impairments, he will not be found disabled;

3. If the claimant has an impairment that meets or equals an impairment listed in Appendix 1 of the Regulations, disability is presumed and benefits are awarded;

4. If the claimant is capable of performing past relevant work, a finding of "not disabled" must be made; and

5. If the claimant's impairment prevents him from doing any other substantial gainful activity, taking into consideration his age, education, past work experience and residual functional capacity, he will be found disabled.

*Anthony,* 954 F.2d at 293; *see also Leggett v. Chater,* 67 F.3d 558, 563 n.2 (5th Cir. 1995); *Wren v. Sullivan,* 925 F.2d 123, 125 (5th Cir. 1991). Under this framework, the claimant bears the burden of proof on the first four steps of the analysis to establish that a disability exists. If successful, the burden shifts to the Commissioner, at step five, to show that the claimant can perform other work. *McQueen v. Apfel,* 168 F.3d 152, 154 (5th Cir. 1999). Once the Commissioner shows that other jobs are available, the burden shifts, again, to the claimant to rebut this finding. *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990). If, at any step in the process, the Commissioner determines that the claimant is or is not disabled, the evaluation ends. *Leggett,* 67 F.3d at 563.

Here, the ALJ found at step one that Mendiola had not engaged in substantial gainful

5

employment since her alleged onset date of October 30, 2014. At step two, the ALJ determined that Mendiola had the following severe impairments: insulin dependent diabetes; neuropathy; retinopathy; carpal tunnel in the right hand; degenerative disc disease; mild glaucoma; obesity; and adjustment disorder with depressed mood. At step three, the ALJ concluded that Mendiola did not have an impairment or a combination of impairments that met or equaled a listed impairment, including Listings 1.04, 9.00, 11.14, 12.04 and 12.07. The ALJ then determined that Mendiola had the "residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except [Mendiola] can stand and walk for two to three hours and sit for six hours out of an eight hour workday. [She] can lift, carry, pull, and push a maximum of ten pounds. [She] should never climb ropes, ladders, or scaffolds, and can occasionally climb stairs. [She] can occasionally balance, stoop, kneel, crouch, and crawl, and frequently finger with her right hand. [She] should avod concentrated exposure to all hazards. Secondary to [her] adjustment disorder with depressed mood and a reduction in concentration from pain, [Mendiola] is limited to detailed, but not complex tasks." The ALJ then concluded, at step four, that Mendiola could perform her past relevant work as a customer service clerk, and that she was, therefore, not disabled.

In this appeal, Mendiola complains about the ALJ's step four finding that she could perform her past work. She also complains about the ALJ's reliance on the opinion Dr. Daniel Costa, who conducted a consultative psychological evaluation of her, and whose opinion about her functional abilities is not consistent with his findings about her ability to follow simple to complex instructions.

6

**V. Discussion**

Within the context of her first issue Mendiola does not challenge, either directly or indirectly, the ALJ's RFC. What she does challenge is the ALJ's application of that RFC to his step four finding that she could perform her past relevant work as a customer service representative. According to Mendiola, the ALJ's step four determination is not supported by the evidence because the job of customer service representative, as Mendiola actually performed it, exceeded the ALJ's RFC. In addition, there is no evidence in the record of the exertional requirements for the job of customer service representative, as that job is generally performed in the national economy. For the reasons that follow, the Magistrate Judge concludes that the ALJ erred in his step four determination, that substantial evidence does not support the step four determination, and that the ALJ's error at step four is not harmless.

As set forth above, the ALJ found that Mendiola had the RFC for a restricted range of sedentary work, with Mendiola: being able to stand and walk for two to three hours and sit for six hours out of an eight hour workday; able to lift, carry, pull, and push a maximum of ten pounds; never able to climb ropes, ladders, or scaffolds, but able to occasionally climb stairs; able to occasionally balance, stoop, kneel, crouch, and crawl, and frequently finger with her right hand; needing to avoid concentrated exposure to all hazards; and being limited to detailed, but not complex tasks. With that restricted range of sedentary work, the ALJ asked a vocational expert at the hearing about Mendiola's ability to perform her past work. The following exchange took place at the hearing:

> Q: Miss Mendiola's past work as a bank teller. How would you characterize that please?

> A: Judge that would be classified at a light exertion work level, defined as skilled work with an SPV of 5.
>
> Q: Her customer service work at the Pearland Water Department?
>
> VE: I need to ask her a couple of questions. Did you sit or stand at your job at Pearland?
>
>> CLMT: In Pearland mainly sitting down. We were at a window the majority. I would say 80%, 70.
>
> VE: Okay. That's what I thought. Thank you. Judge the customer service clerk for the City of Pearland that would be classified at a sedentary exertion work level, would be defined as semi-skilled work with an SPV of 4.
>
> Q: For the purpose of some hypothetical questions I'm going to ask you to assume please always reviewing with an individual whose [sic] approaching advanced age, one who is 50 [at] onset, 53 presently, one certainly who is literate, one is a high school graduate with approximately a year's worth of college credits and one who has [the] same vocational background as Ms. Mendiola possesses. Further assume please sir that secondary to the insulin dependent diabetes, secondary to the neuropathy, the retinopathy, the carpal tunnel on the right as well as the obesity, the hypothetical individual can stand and walk for two to three hours out of eight, sit for six, lift and carry, push and pull a maximum of 10 pounds, could never use ropes, ladders or scaffolds, all other [INAUDIBLE] would be occasional. The[] hypothetical individual would be under the frequent in terms of fine or fine manipulation of fingering on the right and the hypothetical individual is right-hand dominant. Secondary to the issue with the vision and retinopathy and the glaucoma the hypothetical individual [would] need to avoid concentrate[d] exposure to all hazards, secondary to the adjustment disorder with a depressed mood as well as a reduction in concentration from pain the hypothetical individual would be limited [to] detail[ed] but not complex tasks. As to that assessment Mr. King if I did agree with it could a person with that vocational profile perform any of Miss Mendiola's past work?
>
> A: Judge that hypothetical would be able to perform their past work as a customer service representative.

(Tr. 47-49). In determining at step four that Mendiola could perform her past work as a customer service representative the ALJ relied on the testimony of the vocational expert when he found that

"a hypothetical person with the claimant's age, education, work experience, and residual functional capacity could perform her past work as a customer service clerk as performed and as generally performed in the national economy." (Tr. 20). This step four determination is not supported by the record, or the testimony of the vocational expert.

First, the vocational expert did not testify that a person of Mendiola's age, education, work experience and residual functional capacity could perform work as a customer service representative *as generally performed in the national economy*. The vocational expert was not asked that question and did not testify about the exertional level of a customer service job as generally performed in the national economy. Second, while the vocational expert did testify that a person Mendiola's age, education, work experience, and residual functional capacity could perform their past work as a customer service representative *as performed*, the vocational expert based that testimony solely on Mendiola's response to his question about whether she performed most of the work sitting or standing. There was no questioning of Mendiola about the particular lift and carry requirements of her past work as a customer service representative, despite the fact that Mendiola had previously testified that she processed water meters for builders that would come into the water department. (Tr. 31-32). In addition, in the Work History Report Mendiola completed at the time she filed her applications, Mendiola indicated that the heaviest weight she lifted in her job as a customer service representative for the water department was forty (40) pounds, and she frequently lifted 10-25 pounds (Tr. 234). There is nothing in the record that calls into question Mendiola's reporting of the weight she lifted and carried on an occasional or frequent basis as part of her past work as a customer service representative. Therefore, neither the record evidence nor the vocational expert's testimony supports the ALJ's decision at step four that Mendiola could perform her past work as a customer

service representative "as performed and as generally performed in the national economy."

The Commissioner, in response to this issue and Mendiola's Motion for Summary Judgment on it, argues that: (1) the ALJ's reliance on the vocational expert's testimony for his step four finding cannot constitute error because vocational expert testimony was not required for a step four finding, and it was, in any event, Plaintiff's burden at step four to prove that she could not perform her past relevant work; (2) that Mendiola's past work as a customer service representative, if viewed as how that work is generally performed in the national economy, aligns with Mendiola's RFC; and (3) and that the job of order clerk, which is a sedentary position, would fall within the type of work Mendiola did, and which she could continue to do with her RFC. As addressed by Mendiola in her Reply (Document No. 18), none of these arguments can cure the defects in the ALJ's step four determination.

First, while a claimant bears the burden at step four, the record shows that Mendiola generally met that burden with both her testimony at the hearing and the contents of her Work Activity Report, both of which support the conclusion that Mendiola could not, within the RFC found by the ALJ, perform her past work as it was actually performed. As for whether Mendiola could perform her past work as a customer service representative as it was generally performed in the national economy, the Commissioner argues that Mendiola bore the burden to show that as well, but cites no authority and/or regulation that would provide any guidance on how such a showing could be made by a claimant. Moreover, the ALJ chose to consult a vocational expert and chose to rely on the testimony of the vocational expert in making his step four finding. Inasmuch as the vocational expert did not testify about how the job of customer service representative is generally performed in the national economy, the ALJ's step four finding is not supported by any evidence at all.

Second, despite the Commissioner's argument that Mendiola could perform the job of customer service representative, as generally performed in the national economy, within her RFC, and could perform other similar jobs, the Court would have to go beyond the record to make such a determination. Neither the vocational expert nor the ALJ mentioned or referred to any job listing or title in the DOT (Dictionary of Occupational Titles) that encompassed, or was akin to, Mendiola's past work as a customer service representative. The Court cannot now, in this appeal, do what the ALJ failed to do. "The ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council." *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000); *see also Cole v. Barnhart*, 288 F.3d 149, 151 (5th Cir. 2002) ("It is well-established that we may only affirm the Commissioner's decision on the grounds which he stated for doing so.").

Third and finally, the Commissioner's identification in this appeal, in the Commissioner's Reply brief (Document No. 17 at 3-4), of the job of order clerk, DOT 249.362-026, as a job consistent with Mendiola's past work as a customer services representative as that job is generally performed in the national economy, simply comes too late. Neither the ALJ nor the vocational expert considered any job or any job title other than customer service representative. For the Court to go beyond the record and consider job titles not mentioned or referred to at the administrative level would result in a type of *de novo* review that is not allowed under § 405(g).

As for whether the step four error was harmless, the undersigned cannot conclude that it was. Again, for the Court to determine, as urged by the Commissioner, that the step four error was harmless, and that there are, quite obviously, jobs that Mendiola could perform within her RFC, the Court would have to consider the issues *de novo*. This is not a case in which Mendiola's RFC fell squarely within the sedentary exertional level and an application of the medical Vocational

Guidelines could dictate a result. Here, the ALJ found that Mendiola had the RFC for a restricted range of sedentary work, with those restrictions necessarily limiting the types of sedentary jobs Mendiola could perform. An error is harmless if it does not "affect the substantial rights of a party," *Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012), or when it "is inconceivable that the ALJ would have reached a different conclusion" absent the error. *Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003); *Bornette v. Barnhart*, 466 F.Supp.2d 811, 816 (E.D. Tex. 2006) ("Harmless error exits when it is inconceivable that a different administrative conclusion would have been reached absent the error."). Here, where the record evidence does not support the ALJ's decision at step four, it cannot be said that the ALJ's error was harmless, and remand for further proceedings is warranted.

## VI. Conclusion and Recommendation

Based on the foregoing, the Magistrate Judge

RECOMMENDS that Plaintiff's Motion for Summary Judgment (Document No. 15) be GRANTED, that Defendant's Motion for Summary Judgment (Document No. 13) be DENIED, and that this proceeding be REMANDED to the Commissioner for further consideration at step four, and possibly, beyond.

The Clerk shall file this instrument and provide a copy to all counsel and unrepresented parties of record. Within 14 days after being served with a copy, any party may file written objections pursuant to 28 U.S.C. § 636(b)(1)(C), Fed.R.Civ.P. 72(b), to the recommendation made herein. Failure to file objections within such period shall bar an aggrieved party from attacking factual findings on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Ware v. King*, 694 F.2d 89 (5th Cir. 1982) (en banc). Moreover, absent plain error, failure to file objections within the fourteen-day

period bars an aggrieved party from attacking conclusions of law on appeal. *See Douglass v. United Serv. Auto Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996). The original of any written objections shall be filed with the United States District Court Clerk, P.O. Box 61010, Houston, Texas 77208.

    Signed at Houston, Texas, this 31st day of August, 2020.

_____
Frances H. Stacy
United States Magistrate Judge